

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JPL:JD
F. #2015R00319

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 8, 2015

By ECF

Honorable Lois Bloom
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Michael J. Dodd, et al.
               Criminal Docket No. 15-M-626

Dear Judge Bloom:

        The government respectfully requests that the Court enter a permanent order of detention for each of the defendants Michael J. Dodd, also known as "Michael Stanley," Kenneth Landgaard and James Robert Shipman, Jr. There is no combination of conditions that could be imposed on the individual defendants that would reasonably assure his presence in court. See 18 U.S.C. §§ 3142(b). There is a substantial risk of flight due to: a) the overwhelming nature of the evidence against Dodd, Landgaard and Shipman; b) the lengthy jail term each faces if convicted and c) the international ties and off shore accounts created and maintained by the defendants in the names of others – which contain monies that would allow each the means to flee and live abroad comfortably.

## I.    Background

        Landgaard and Shipman were arrested at a Long Island airport today for their role in a scheme to launder $2.6 million that they believed were the proceeds of an illegal scheme to manipulate the price of publicly traded stocks. The "scheme" was in fact an undercover sting operation being conducted by the FBI. They are charged in a complaint with money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). As detailed in the complaint, the defendants had already laundered $400,000 by flying cash on private jets from the United States to Panama, thereby violating U.S. tax, banking and customs regulations. Once the money was in Panama, Dodd used nominee accounts in Panama and Belize to make deposits in a way that was untraceable and avoided Panamanian reporting requirements. Dodd then resent the money (minus his fee) to various

covert accounts in the Eastern District of New York which had been set up by the FBI as part of the sting operation.

On July 8, 2015, Shipman traveled by private jet to an airport on Long Island to pick up cash for the purpose of laundering it off-shore in Panama, Belize and elsewhere using "nominee accounts." Landgaard flew on a commercial airline to the same airport and met with Shipman and the undercover FBI agent (UC-1). The defendants boarded the jet of UC-1, engaged in conversation related to off-shore money laundering, and took possession of a bag which contained $2.2 million in cash. They were placed under arrest while attempting to place the cash on the private jet used by Shipman and obtained by Landgaard (who owns and operates a Panamanian private jet company). Dodd was arrested a short time later entering a Manhattan restaurant after agreeing to meet UC-1 to discuss setting up untraceable off-shore nominee accounts for the laundering of money obtained from illegal stock manipulation in the United States. Dodd had been advised by UC-1 that Landgaard had just taken $2.2 million in cash from UC-1 for the money laundering scheme agreed to by Dodd, Landgaard and Shipman.

## II. Argument

### A. The Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). In determining whether the defendant should be released, the Court must consider whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

The Bail Reform Act lists four factors to be considered in this analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

### B. The Defendants Pose a Substantial Risk of Flight and Should Be Detained

The government respectfully submits that each defendant poses a substantial risk of flight and that no condition or combination of conditions would reasonably assure his future appearance. To summarize, the government's evidence against the defendants is overwhelming, including undercover recordings on audio and video, text messages, financial records and customs records. As detailed in the complaint, the defendants engaged in

2

complex efforts to avoid detection by law enforcement. Dodd (who used an alias) provided UC-1 with encryption software to use for their discussions of the illegal scheme, going so far as to brag during a recorded conversation that even "the NSA can't listen to it, nobody can, because it's encrypted end to end." Dodd also agreed to create fraudulent invoices for UC-1 to mask the true nature of the money laundering scheme. In addition, Dodd agreed to make structured deposits in Panama and Belize into nominee accounts, all for his own personal gain in the scheme. Dodd introduced UC-1 to Landgaard, telling UC-1 that by using private jets obtained from Landgaard's aviation company, flying cash into Panama would be a safe way to avoid law enforcement. Landgaard and Shipman insisted that the cash be packaged in expensive Louis Vuitton duffel bags because, as Shipman stated, "because cops can't get the authority to buy a Louis Vuitton bag, it's too expensive." Shipman referred to being "in trouble" in the past; each defendant made statements at various times referring to their desire to avoid prison. Landgaard and Shipman insisted that UC-1 speak to them on untraceable "throwaway" or "burner" cellphones, or an encrypted online chat system. Dodd traveled to Manhattan to meet UC-1 in person rather than discuss his crimes on the telephone.

   In addition, while each defendant is a U.S. citizen, each has substantial ties to foreign jurisdictions. Dodd resides in Panama. Moreover, he has demonstrated a vast network of connections in Belize and elsewhere; he is also adept at "hiding" money off shore and therefore could easily flee the Court's jurisdiction and live comfortably elsewhere.

   Landgaard has substantial ties to Panama and Belize. In addition he owns an aviation company in Panama which flies private jets around the world. Therefore, he too could easily flee this Court's jurisdiction and live comfortably overseas if he desired.

   Shipman, who was previously arrested for smuggling narcotics, has made recorded statements to UC-1 that he has a Belize passport, and that if he ever sensed that he was soon to be arrested he would "be gone to Belize in 24 hours and never be seen again."

   Each of the defendants has a compelling reason to flee the Court's jurisdiction. They are each facing a substantial term of imprisonment if convicted. The applicable advisory United States Sentencing Guidelines (U.S.S.G.) call for terms of imprisonment for each defendant of 70-87 months, assuming each falls within Criminal History Category I.[1]

   Each defendant has ties to at least one foreign country that would not subject them to extradition. Dodd resides full time in Panama. Landgaard and Shipman have little reason to stay in the U.S., as their personal assets are subject to forfeiture. Finally, each defendant has the means to flee and hide, having a proficiency at hiding money off-shore in untraceable accounts.

---

[1] This sentencing range assumes a total offense level of 27, based on a base offense level of 7 (U.S.S.G. § 2B1.1(a)(1)), plus 18 levels for an intended loss of over $2,500,000, (U.S.S.G § 2B1.1(b)(1)(J)), plus 2 levels for the use of sophisticated means (U.S.S.G. § 2B1.1(b)(10)(C)).

## III. <u>Conclusion</u>

For these reasons, the government respectfully requests that Your Honor enter a permanent order of detention for Michael Dodd, also known as "Michael Stanley," Kenneth Ardell Landgaard and James Robert Shipman, Jr.

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney

By:     /s/

Jack Dennehy
Assistant U.S. Attorney
(718) 254-6133